**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
STEVEN SHERMAN,

                Plaintiff,

       -against-

THE COUNTY OF SUFFOLK, THE SUFFOLK
COUNTY SHERIFF'S DEPARTMENT, C.O.
TSCHANTRE, C.O. HEMMENDINGER,
DEPUTY SHERIFF WEICK, and DEPUTY
SHERIFF KORTE,

                Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-cv-2528 (ADS)(SIL)

**APPEARANCES:**

**Cronin & Byczek LLP**
*Attorneys for the Plaintiff*
1983 Marcus Avenue
Suite C-120
New Hyde Park, NY 11042
      By:    Linda Cronin, Esq.
             Dominick Peter Revellino, Esq.
             Mariam Ahmad, Esq.
             Moshe C. Bobker, Esq.
             Shahin Mashhadian, Esq.
             Susan P. Bernstein, Esq., Of Counsel

**Suffolk County Attorney's Office**
*Attorneys for the Defendants*
H. Lee Dennison Building, 5th Floor
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788-4311
      By:    Elaine M. Barraga, Assistant County Attorney

**SPATT, District Judge.**

On May 26, 2011, the Plaintiff Steven Sherman (the "Plaintiff") filed the present

action against the Defendants, his former employers the County of Suffolk ("Suffolk

County"); the Suffolk County Sheriff's Department, and his former supervisors a

1

Corrections Officer with the surname Tschantre ("Tschantre"), a Corrections Officer with the surname Hemmendinger ("Hemmendinger"), Deputy Sheriff William Weick (Weick"), and a Deputy Sheriff with the surname Korte ("Korte")(together the "Individual Defendants" and collectively the "Defendants"). The Plaintiff asserted violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"); and New York Executive Law § 296 ("NYSHRL").

On October 26, 2011, the Plaintiff filed an amended complaint, this time for violations of the ADA, the NYSHRL, and 42 U.S.C. § 1983.

Following the completion of discovery, on March 27, 2014, the Defendants moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment dismissing the amended complaint.

For the reasons set forth, the Court grants in part and denies in part the motion for summary judgment.

## I.     BACKGROUND

A.  Factual Background

Unless stated otherwise, the following facts are drawn from the parties' Rule 56.1 Statements and attached exhibits, and have been construed in a light most favorable to the non-moving party, the Plaintiff. Triable issues of fact are noted.

In January 2010, the Plaintiff received and accepted a conditional job offer as a Correction Officer I from the Suffolk County Sherriff's Department. The duties of a Correction Officer I include guarding prisoners and maintaining order and security at Suffolk County detention and correctional facilities. Correction Officers must have a

strong knowledge of the rules and regulations of the Suffolk County Correctional facilities, and are expected to possess intelligence, communicative ability, and physical and mental fitness commensurate with a position entailing risk to, and responsibility over, the safety of self and others. Prior to entering the Correction Officers Academy, the Plaintiff understood that his offer was conditional upon passing established academic and physical training requirements. The Plaintiff commenced the Academy's thirteen-week training program in January 2010.

The following events are structured in terms of events purportedly related to the alleged age discrimination, the alleged disability discrimination, the alleged hostile work environment, the Graduation at the Academy, and the Plaintiff's time both during and after his work at the Suffolk County Correctional Facility. These events, of course, overlap in certain respects.

B. The Alleged Age Discrimination Claim

At 55 years of age, the Plaintiff was the oldest recruit in his class. It is not uncommon for Correction Officer I recruit classes to contain members over the age of fifty and there is no maximum age limit for the position of Correction Officer I.

The Plaintiff alleges that on his second day at the Academy, Corrections Officer Tschantre asked the recruits who was the oldest in the class, and when he raised his hand, she remarked to him, "aren't you glad there's no age limit?"

C. The Alleged Disability Discrimination Claim

Recruits participate in physical training sessions where they do basic calisthenics. The Defendants assert that the "Mountain Climber" is a common callisthenic exercise generally administered to all academy classes throughout training. The Plaintiff asserts

that both Cos. Tschantre and Hemmendinger considered the "Mountain Climber" an advanced exercise and could not recall such early administration to recruits.

On January 27, 2010, the Plaintiff injured his quad muscle in his left leg on the rubber-matted drill floor while doing the "Mountain Climber." The Plaintiff was able to change into his Academy uniform despite feeling pain in his leg. That day, the Plaintiff continued with the educational portion of the Academy training. The Plaintiff was also able to walk up the stairs to the second floor of the Academy.

On the day of the injury, the Plaintiff did not say anything about it to any instructor or recruit, and did not contact a physician. The Plaintiff maintains that he failed to do so because he was then unaware of the severity of the leg injury. The Plaintiff drove home that afternoon, and self-treated himself with pain medicine.

The following day, the Plaintiff visited his personal physician, who diagnosed him with a quad strain. The Plaintiff asked his physician if he could commence physical therapy as soon as possible.

On February 4, 2010, the Plaintiff was called to the command office to discuss his injury. The Plaintiff alleges that on his way to the office he ran into Tschantre and she apologized for what she considered to be the inappropriately early administration of the mountain climber.

At that meeting, Suffolk County Lt. L'Hommedeau discussed with the Plaintiff his option, in the wake of the injury, to leave and then rejoin the Academy in the following class of recruits. The parties dispute whether L'Hommedeau actively encouraged the Plaintiff to exercise this option. The Plaintiff, unsure of when the next

class would be held, remained enrolled at the Academy and informed his supervisors that he had commenced physical therapy.

L'Hommedeau subsequently assured the Plaintiff that the Defendants would do "whatever they could to help him recover," including allowing him to use the elevator and accommodating any extra training he might need to do. L'Hommedeau told the Plaintiff "we'll work with you; we'll be there for you. We'll do everything we can to get you through the [A]cademy. I'm going to allow you to use the elevator to let your leg heal, and Tschantre will be there for you. Tschrante would say I'll be there for you. [sic]. If you need anything just ask me, you know I will help you through all the physicalness [sic] you have to do and extra training and everything else. I'll be there for you . . ." (The Plaintiff Dep., at 63.) The Plaintiff did not participate in physical fitness training for the remainder of the Academy program.

On February 11, 2010, the Plaintiff spoke to an Investigator with the surname Ponticello at the Medical Evaluation Unit. The Plaintiff alleges that Ponticello tried to persuade him to deny his injury and rejoin the physical training, saying that the Academy would "come after him because of his age."

On February 15, 2010, the Plaintiff submitted a letter from his physical therapist stating that failure to abstain from strenuous activity during the next 4-6 weeks could result in further injury.

On February 22, 2010, the Plaintiff submitted a letter to Tschantre asking her for help and advice on rehabilitating his injury. This letter went unanswered.

On April 2, 2010, the Plaintiff underwent an MRI performed on his leg. The test results showed no significant tear, but bursitis of the hip and tendinitis as a result, the

Plaintiff contends, of being forced to use the stairs during the period following his injury. In the period between the injury and this evaluation, the Plaintiff successfully climbed stairs, changed in and out of uniform, and drove, though he contends that pain frequently accompanied these activities. The Plaintiff considered his leg injury a debilitating disability for life. The Defendants disagreed.

In July 2010, the Plaintiff participated in and completed firearms training, which included running. The Defendants maintain that this fact undermines any alleged claim of disability. The Plaintiff testified that he did not go against his physician's orders when participating in firearms training because "the leg was feeling well enough for [him] to attempt to do it, so [he] did it." (Id. at 65.)

D. The Alleged Hostile Work Environment Claim

The Plaintiff understood that training in the Academy was conducted in a paramilitary environment.

That said, according to the Plaintiff, beginning on March 5, 2010, he began to feel isolated from his fellow recruits. For example, on March 15, 2010, each recruit except the Plaintiff received handcuffs. The Defendants assert that the Plaintiff did not receive handcuffs because he did not participate in handcuff training.

The Plaintiff counters that the Defendants' discriminatory animus on the basis of age and disability led to the decision not to give him handcuffs. In support of this assertion, the Plaintiff notes that the Defendants gave handcuffs to a recruit Paula DiCarlo, aged 39, despite her failure to participate in handcuff training. The Plaintiff asserts that he missed the handcuff training because he had been called to the Command Office.

Also, on March 15, 2010, the Plaintiff was called to the Command Office, where Weick allegedly chastised the Plaintiff for filing a form 6 standard report improperly and eleven days past the requested date. The form was returned to the Plaintiff stamped "Do Over."

On March 18, 2010, Korte spoke with the Plaintiff in the Command Office. The Plaintiff alleges that Korte berated him, and this incident was overheard by Darrell Mayo and Timothy Cable, other recruits, with whom he later discussed the incident.

Later that day, the Plaintiff was directed to copy military protocol regarding proper treatment of superior officers from the Academy guidebook. The Defendants contend that this was not punishment, but standard training procedure. The Plaintiff believes the exercise was intended to establish a "paper trail" to falsely document poor performance and to later justify his termination.

However, Mayo testified that the instructors at the Academy treated the Plaintiff the same as all of the other recruits and were trying to "get us to learn different things, and they were using team building skills to get everyone to learn and adapt to a new job." (Mayo Dep., at 24.) Mayo further testified that he did not recall instructors saying anything different to the Plaintiff than they did to other recruits or making comments with respect to the Plaintiff's age.

E. The Internal Complaint of Discrimination

On March 22, 2010, the Plaintiff filed an informal complaint, in writing, to Bob Draffin of Personnel Relations. (Defs' Exh. K.) In that letter, the Plaintiff alleges that he was "being treated in an unfair manner because of my age and my injury." (Id.) The discrimination apparently ceased after filing of the complaint.

On March 26, 2010, the Plaintiff withdrew the complaint, in writing, so as not jeopardize the Individual Defendants' careers.

On April 8, 2010, the Plaintiff wrote a letter to Debra Hallock, a superior, informing her of his reasons for not pursuing the discrimination complaint further and expressing to her his belief that the situation was resolved. Specifically, the Plaintiff wrote that "[it appears that the situation we spoke of has remedied itself, and I believe that the outcome will be satisfactory for all parties involved . . . I do not wish to pursue this further, unless the situation presents itself again." (Pl.'s Exh. L.).

F. The Graduation

On April 23, 2010, the date of Academy Graduation, the Plaintiff had not completed his physical training requirements. The Plaintiff was permitted to attend the ceremony in uniform, but was not allowed to participate within the proceedings. Rather, the Plaintiff sat in the audience with his wife. The Plaintiff contends that his exclusion from the proceedings on grounds of medical restriction was unprecedented, and reflected a discriminatory animus against him.

The Plaintiff further alleges that he was required to climb stairs in order to pose with his fellow recruits for a graduation picture, in contravention of medical orders and Lt. L'Hommedeau's authorization to allow him to abstain from using stairs. The Defendants maintain that he did so voluntarily.

The Plaintiff further states that he only received his badge after having to beg for it, causing him further humiliation. The Defendants characterize the conferral of a badge and diploma on the Plaintiff prior to completion of the physical requirements of the Academy and New York State as a "courtesy."

The Plaintiff was granted an extension of a year to satisfy his physical training requirements.

G. The Suffolk County Correctional Facility

On April 27, 2010, the Plaintiff commenced his position at the Suffolk County Correctional Facility, working on "light duty" at Station 1. While working at the correctional facility, the Plaintiff wore a knee brace but did not tell his superior officers of this fact for fear of reprisals.

On June 30, 2010, the Plaintiff was cleared to return to full duty. The Plaintiff alleges that, throughout the period between April and August of 2010, he felt incapable of fully performing his duties due to increasingly severe pain in his left knee stemming from his injury. The Plaintiff states that he has medical documentation linking this pain to the injury.

However, according to the Plaintiff, Lt. L' Hommedeau ignored this documentation and commanded him to complete the standard 1.5 mile run required of all recruits. The Plaintiff had failed to complete the run during training due to his injury and expected three to four months of a probationary grace period to fulfill the requirement. The Plaintiff alleges that L'Hommedeau reneged on his promise to maintain this grace period. The Plaintiff states that, although he felt capable of running short bursts and dealing with inmates, he was not capable of running 1.5 miles, and had been trying, but failing, to do so in physical therapy. The Plaintiff attributes the lack of progress to a regression of his injury as a result of being required to use Academy stairs. However, the Plaintiff admitted that considering that he presented himself to the Defendants as being

able to work full duty, it was a fair request for the Defendants to ask him to complete the 1.5 mile run. (Pl Dep., at 120.)

On June 22, 2010, the Plaintiff received an evaluation of his work performance from Evaluator C.O. Chris Lombardo ("Lombardo"). Lombardo indicated that the Plaintiff's performance was deficient and that he required remedial training and re-evaluation in a number of categories crucial to the satisfactory fulfillment of his duties. In particular, Lombardo reported that the Plaintiff needed to "try to understand the risk [and] danger associated with his new career" and noted his "deficien[cy] in some of the most basic elements necessary to perform his duties safely and effectively." (Barraga Decl., Exh. W.) Lombardo described the evaluation rating to be a product of "lack of hands on training in the facility." (Id.) The Plaintiff contends that the unfavorable evaluation was, in fact, an attempt to secure more training for him.

On June 30, 2010, the Plaintiff received an evaluation of his work performance from Evaluator C.O. Kenneth Selg ("Selg"). Selg indicated that the Plaintiff's performances was deficient in basic policies and procedures and lacked the stress-management and command presence necessary to exercise proper control over inmates. In particular, Selg reported that the Plaintiff required "better working knowledge of department policies and procedures; [that he] tends to repeat mistakes; [that he] tends to diminish under stress and seems to be overwhelmed at times; [that he] doesn't seem to use the appropriate level of command voice or physical presence during inmate movement such as yard rehab programs and courts." (Id., Exh. X.)

On July 20, 2010, the Plaintiff received a letter from the Academy requesting that he complete the physical training requirements.

In August 2010, the Plaintiff's physician supplied a note to the Defendants indicating that the Plaintiff could not complete the required mile and half run and could not complete the physical part of the Academy at that time.

On October 7, 2010, the Plaintiff arrived home from work, when three officers approached and informed him of his termination. The Plaintiff alleges that he was terminated due to his age and alleged disability.

H. Post-Correctional Officer Events

Beginning on March 26, 2012, the Plaintiff began an anti-depressant treatment regimen under the care of his therapist. He attributes his need for anti-depressants in part to the alleged discrimination he faced during his time at the Suffolk County Correctional Facilities. By June 11, 2012, the Plaintiff's therapist reported that the Plaintiff had indicated that he was "less depressed and is able to manage his anxiety. Although [the Plaintiff] periodically experiences moments of doubt and concerns over 'losing the lawsuit' he remains focused on what he has control over [and] is able to manage." (Id., Exh. Y.)

The Plaintiff ultimately obtained employment as an assistant supervisor at Park House, where he was responsible for monitoring both staff and psychiatrically ill patients. The Plaintiff held this position for ten or eleven months. This suit followed.

## II. DISCUSSION

A. The Claims Against the Suffolk County Sheriff's Department

"[T]he Suffolk County Sheriff's Department . . . is not a suable entity and claims against it are duplicative of those against the County." Hubbs v. Cnty. of Suffolk, No. 11-CV-6353 (JS)(WDW), 2014 WL 2573393, at *7 (E.D.N.Y. June 9, 2014); see Hayes v.

Cnty. of Sullivan, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012)(finding that the Sullivan County Sheriff's Department is not a suable entity); Melendez v. Nassau Cnty., No. 10–CV–2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept.17, 2010)(finding that the Nassau County Sheriff's Department Division of Correction is not a suable entity); Barreto v. Suffolk Cnty., No. 10–CV–0028 (JS)(AKT), 2010 WL 301949, at *2 (E.D.N.Y. Jan. 20, 2010)(finding that the Suffolk County Sheriff's Department is not a suable entity). Accordingly, all claims against the Suffolk County Sherriff's Department are dismissed.

B. The Legal Standard on Summary Judgment

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Nunn v. Mass. Cas. Ins. Co., 758 F.3d 109, 114 n. 4 (2d Cir. 2014). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial, and cannot rely merely on allegations or denials contained in the pleadings. See Fed. R. Civ. P. 56(c); accord Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011)(citation omitted).

In cases involving claims of employment discrimination, "an extra measure of caution is merited" in granting summary judgment because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006)(citation omitted). Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). Ultimately, the test for summary judgment is whether "a reasonable jury could return a verdict for the nonmoving party." Nunn, 758 F.3d at 114 n. 4 (citation omitted).

C.  There is No Individual Liability for ADA Discrimination or Retaliation Claims

Title I of the ADA prohibits disability discrimination by a covered entity, such as an employer, employment agency, labor organization, or joint labor-management committee. 42 U.S.C. §§ 12111(2), 12112(a). The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A).

Because "Title VII of the Civil Rights Act of 1964 defines 'employer' similarly to the ADA, courts in this Circuit have consistently applied the Title VII definition of 'employer' to the ADA." Ivanov v. New York City Transit Auth., No. 13 CIV. 4280 (PKC), 2014 WL 2600230, at *5 (S.D.N.Y. June 5, 2014). Under Title VII, an individual employee is not an "employer," and may not be held liable for discrimination. Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995), abrogated on other grounds by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d

662 (1998). "Because an individual is not an 'employer' under Title VII, an individual is also not an 'employer' under the ADA and, therefore, may not be liable for disability discrimination." Ivanov, 2014 WL 2600230, at *5; Corr v. MTA Long Island Bus, 27 F. Supp. 2d 359, 370 (E.D.N.Y. 1998)("In light of Tomka, and the overwhelming authority in the Second Circuit construing Tomka as prohibiting individual liability under the ADA, Plaintiff's ADA claim against [individual defendants] must be . . . dismissed."), aff'd, No. 98–9417, 1999 WL 980960, at *2 (2d Cir. Oct.7, 1999)("We also agree with the district court that . . . there is no right of recovery against individual defendants under the ADA." (citing Tomka, 66 F.3d at 1314)).

Similarly, an individual may not be liable under the retaliation provision of the ADA. Because the remedial provisions of Title VII do not provide for individual liability, "it follows that, in the context of employment discrimination, the retaliation provision of the ADA, which explicitly borrows the remedies set forth in [Title VII], cannot provide for individual liability." Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010); see also Tomka, 66 F.3d at 1314 (no individual liability under Title VII).

Accordingly, that part of the Defendants' motion for summary judgment dismissing the Plaintiff's ADA discrimination and retaliation claims against the Individual Defendants is granted.

D. The Plaintiff's Discrimination Claim Under the ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA

defines discrimination on the basis of disability as, among other things, "limiting, segregating, or classifying a[n] . . . employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such . . . employee." 42 U.S.C. § 12112.

The plaintiff "bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination." Heyman v. Queen Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999)(italics added); see also Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 383 (2d Cir. 1996)("A plaintiff who raises a disability discrimination claim bears the initial burden of establishing a *prima facie* case.")(italics added).  "To make out a *prima facie* case, a plaintiff must show that (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered adverse employment action because of her disability." Morris v. Town of Islip, No. 12-CV-2984 (JFB)(SIL), 2014 WL 4700227, at *8 (E.D.N.Y. Sept. 22, 2014)(italics added); see Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003)(citing Ryan v. Grae & Rybicki, P. C., 135 F.3d 867, 869–70 (2d Cir. 1998)).

Here, the Defendants do not argue that Suffolk County is not subject to the ADA or that Suffolk County is not liable for the wrongful acts of its agents such as the Individual Defendants when acting within the scope of their authority.  Neither do the Defendants argue that the Plaintiff did not suffer an adverse employment action in the form of termination of his employment.  Rather, the Defendants contend that the Plaintiff

did not suffer from a "disability," actual or perceived by them, as defined by the ADA; that he was qualified for the position of Corrections Officer I with or without reasonable accommodation; or that he was terminated as a result of any such "disability."

Although not extensively argued by the parties, the Court pauses to consider whether there were any additional "adverse employment actions" taken against the Plaintiff.  A plaintiff suffers an "adverse employment action" under the ADA when "he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)(quoting Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)).  A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya, 202 F.3d at 640 (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993))(internal quotation marks omitted).  "Examples of materially adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities. . . .'" Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)(quoting Galabya, 202 F.3d at 640).

In this case, the Court finds that, aside from his termination of employment with the Suffolk County Sheriff's Office, the Plaintiff did not suffer any "adverse employment action."  In this regard, the Court finds that any mistreatment of the Plaintiff with regard to the graduation ceremony did not materially alter the terms and conditions of his employment.  Nor, in the Court's view, on this record, did the requirement that the

Plaintiff use the stairway of the Academy, instead of an elevator, rise to the level of an "adverse employment action."

While, in certain circumstances, the Court could envision a requirement to use stairs instead of an elevator as an "adverse employment action," the Court declines to so find on this record, particularly given that the Plaintiff concedes that the use of the stairway was part of his training and he did not object to this. Notably, the Plaintiff does not bring a "failure to accommodate" claim under the ADA. In any event, "[w]hile courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action." Gallagher v. Town of Fairfield, No. 3:10-CV-1270 (CFD), 2011 WL 3563160, at *5 (D. Conn. Aug. 15, 2011).

Having concluded that the only viable "adverse employment action" would be the termination of the Plaintiff's employment, the Court turns to whether a genuine issue of material fact exists as to whether the Plaintiff had a "disability" within the meaning of the ADA. The ADA Amendment Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 112 Stat. 3553 (2008)(codified as amended at 42 U.S.C. §§ 12101–12102 (1990)) defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

In this case, the Plaintiff contends that he had a "disability" under the ADA

because the Defendants regarded him as having a physical impairment that substantially limited one or more major life activities.

Prior to the passage of the ADAAA, a plaintiff was required to show that his or her perceived disability was one that "substantially limited a major life activity." <u>Jordan v. Forfeiture Support Associates</u>, 928 F. Supp. 2d 588, 605 (E.D.N.Y. 2013). However, the ADAA set out a more lenient standard for determining whether an individual is regarded as disabled under the ADA: "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." <u>Id.</u> (quoting 42 U.S.C. § 12102(3)(A)). Therefore, following passage of the ADAAA, a plaintiff need not show that he or she had a condition that "substantially limited a major life activity." <u>Id.</u> (quoting 42 U.S.C. § 12102(3)(B))

Rather, he or she need only show that the employer perceived her as being disabled and that the impairment was not "minor" or "transitory," meaning that the impairment has "an actual or expected duration of 6 months or less." <u>Id.</u> The regulations further classify the "transitory and minor" exception as a defense:

> It may be a defense to a charge of discrimination by an individual claiming coverage under the 'regarded as' prong of the definition of disability that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) 'transitory and minor.' To establish this defense, a covered entity must demonstrate that the impairment is both 'transitory' and 'minor.' Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively. A covered entity may not defeat 'regarded as' coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the covered entity must demonstrate that the

impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor.

29 C.F.R. § 1630.15(f).

Here, on the one hand, the Plaintiff admits that he did not miss a day of work as a result of the injury. Further, in June 2010, the Plaintiff was cleared for full duty and, soon thereafter, he could run a mile at physical therapy. Finally, while the Plaintiff testified that the injury would debilitate him for the rest of his life and would require surgery (Plaintiff Dep., at 142.), he points to no objective medical evidence supporting this testimony.

That said, even if the summary judgment record indicated that the injury was "minor," the Defendant must also show, for purposes of this motion, that there is no genuine issue of material fact that the injury was also "transitory." The summary judgment record indicates that the injury hampered the Plaintiff for at least six months after January 27, 2010, the date of the injury. Therefore, a rational juror could conclude that the Plaintiff's impairment was not "minor" and "transitory."

The Court next considers if there is a genuine issue of material fact as to whether the Plaintiff was "otherwise qualified" for the position of Corrections Officer I. The Plaintiff contends that the Defendants have failed to dispute whether a genuine issue of material fact exists as to this prong. However, a close reading of the Defendants' memorandum in support of their motion for summary judgment reveals that they do, in fact, argue that the Plaintiff has failed to satisfy this prong.

The Second Circuit has defined what constitutes "otherwise qualified" and discussed which party bears the burden of proof:

> The plaintiff bears the burden of production and persuasion on the issue of whether he is otherwise qualified for the job in question. A plaintiff cannot be considered otherwise qualified unless he is able, with or without assistance, to perform the essential functions of the job in question. It follows that the plaintiff bears the burden of proving either that she can meet the requirements of the job without assistance, or that an accommodation exists that permits her to perform the job's essential functions.

Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 137–38 (2d Cir. 1995). "Whether an individual is qualified is dependent upon his condition at the time of the alleged adverse employment action." Bohen v. Potter, No. 04-CV-1039 (WMS), 2009 WL 791356, at *9 (W.D.N.Y. Mar. 23, 2009).

In this case, the Defendants contend that the Plaintiff has failed to establish that he was "otherwise qualified" for the position of Corrections Officer I because, as evidenced by his evaluations, his work performance was "minimally acceptable" and he lacked the necessary interpersonal skills of a Corrections Officer.

However, particularly crucial to the Plaintiff's ADA discrimination claim is the deposition testimony of Sergeant Donald Sherrill of the Suffolk County Sheriff's Office. Sherrill testified that Lombardo told him:

> [T]he evaluation was not intended to terminate [the Plaintiff] or to get [the Plaintiff] in any trouble or to that he was a bad officer. His issue was for giving him some low evaluations was for the purpose of to get him more training because of the amount of time he spent on light duty and it wasn't really fair to evaluate him on the same way that all the other officers who were getting consistent training were getting.

(Sherrill Dep., at 83.)

Although not argued by the Defendants, the Court addresses whether what Lombardo told Sherrill is inadmissible hearsay. See Fed. R. Civ. P. 56(c) (requiring evidence in support of or in opposition to summary judgment be

admissible); see also Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009)("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.")(internal quotation marks omitted).

Of relevance here, Rule 801(d)(2)(D) of the Federal Rules of Evidence provides that a statement is not hearsay if it is offered against an opposing party, and it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." There is no dispute that Lombardo, a Corrections Officer for the Defendant Suffolk County Sheriff's Office, was an "agent or employee" of that office and that the substance of his conversation with Sherrill concerned a matter within the scope of his employment and occurred while it existed.

Properly viewed, this testimony, coupled with the Plaintiff's testimony, lends support to the idea that, the Plaintiff, with certain assistance in the form of additional training, would be able to perform the functions of Correction Officer I. Accordingly, the Court finds that there is a genuine issue of material fact as to whether the Plaintiff was "otherwise qualified" for the position of Corrections Officer I.

The Court further finds a genuine issue of material fact exists as to whether the Plaintiff's termination occurred "because of" his "disability." Under the ADA, "[e]stablishing that an individual is 'regarded as having such an impairment' does not, by itself establish liability." Risco v. McHugh, 868 F. Supp. 2d 75, 109 (S.D.N.Y. 2012). Rather, "[l]iability is established under title I of the ADA only when an individual proves

that [his or her employer] discriminated on the basis of disability within the meaning of section 102 of the ADA, 42 U.S.C. 12112." <u>Id.</u> (alteration in original)(citing 29 C.F.R. § 1630.2(l)(3)).

Discriminatory intent may be "inferred from the totality of the circumstances, including . . . the historical background of the decision . . .; the specific sequence of events leading up to the challenged decision . . .; [and] contemporary statements by members of the decisionmaking body." <u>Kaufman v. Columbia Mem'l Hosp.</u>, 2 F. Supp. 3d 265, 278 (N.D.N.Y. Feb.19, 2014)(internal quotation marks and citation omitted)(alterations in original). However, the plaintiff "cannot rely solely on conclusory allegations of discrimination without any concrete evidence to support her claims." <u>Id.</u> (citation omitted); <u>see also</u> <u>Brown v. Northrop Grumman Corp.</u>, No. 12-CV-1488 (JS)(GRB), 2014 WL 4175795, at *11 (E.D.N.Y. Aug. 19, 2014).

The Defendants argue in a cursory fashion that this claim fails as a matter of law because there is no genuine issue of material fact as to whether the Plaintiff would have been terminated from his employment "but for" his age and "disability." The Plaintiff does little to address the proper causation standard for an ADA claim. Therefore, a brief history of the relevant case law is in order.

In <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 337 (2d Cir. 2000), the Second Circuit ruled that "a plaintiff need not demonstrate that disability was the sole cause of the adverse employment action;" instead, "he must show only that disability played a motivating role in the decision." Since that time, however, the Supreme Court of the United States has held that, while the mixed motives standard applies to claims of discrimination brought under Title VII, that standard is not available to plaintiffs suing

under the ADEA. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009). The ADEA, the Court explained, is simply a different statute; while Title VII was expressly amended in 1991 by Congress to impose liability when an improper consideration was "'a motivating factor'" for an adverse employment action, the ADEA imposes liability only when such an action was "because of" a protected characteristic. Id. at 175–76 (quoting 42 U.S.C. § 2000e–2(m)). The ADEA's language thus requires plaintiffs to prove that discrimination was the "but-for cause of the employer's adverse action." Id. at 176 (internal quotation marks omitted).

However, despite an apparent inconsistency with Gross, the Second Circuit has adhered, albeit in a summary order, to the view that an ADA claim can succeed if the plaintiff shows that discriminatory animus played a "motivating role" in an "adverse employment action." Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011)(citing Parker). Perry made no reference to Gross.

In University of Tex. Sw. Med. Ctr. v. Nassar, ——U.S. ——, ——, ——, 133 S. Ct. 2517, 2526, 2533, 186 L. Ed. 2d 503 (2013)), the Supreme Court held that, for a Title VII retaliation claim, unlike with discrimination claims, a plaintiff must establish that the allegedly unlawful retaliation "was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." See also Zann Kwan v. Andalex Grp., 737 F.3d 834, 845 (2d Cir. 2013)(citing Nassar). The Court reached this conclusion because, among other reasons, the anti-retaliation provision of Title VII, like the ADEA statute at issue in Gross, "makes it unlawful for an employer to take adverse employment action against an employee "because" of certain criteria. The Court concluded that "[g]iven the lack of any meaningful textual difference between the text in

this statute and the one in <u>Gross</u>, the proper conclusion here, as in <u>Gross</u>, is that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." <u>Nassar</u>, 133 S. Ct. at 2528, 186 L. Ed. 2d 503.

That the Supreme Court in <u>Gross</u> interpreted the terms "because of" in the ADEA to require a showing of "but for" causation and in <u>Nassar</u> the same terms in Title VII to require a showing of "but for" causation lends support to idea that a higher court would apply "but for" causation to ADA claims. However, "the question of whether the heightened, 'but-for' standard of causation for Title VII retaliation claims . . . applies to claims asserted under the ADA, is one that has not yet been addressed by the Second Circuit." <u>Castro v. City of New York</u>, ⎯⎯F. Supp. 2d ⎯⎯, No. 10–CV–4898 (NG)(VVP), 2014 WL 2582830, at *14 n. 34 (E.D.N.Y. June 5, 2014); <u>Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.</u>, No. 13-4164-CV, 2014 WL 4958166, at *6 n. 3 (2d Cir. Oct. 6, 2014)(declining to decide this question); <u>Krachenfels v. N. Shore Long Island Jewish Health Sys.</u>, No. 13-CV-243 (JFB)(WDW), 2014 WL 3867560, at *14 n. 12 (E.D.N.Y. July 29, 2014)("it is an open question in this Circuit whether an ADA plaintiff must now show that disability discrimination (or the plaintiff's protected activity, in a retaliation claim) was a but-for cause of the adverse employment action.").

"Several circuits other than the Second Circuit have already taken the step <u>Gross</u> seems to presage and applied the but-for standard to ADA claims." <u>Lyman</u>, 2014 WL 3417394, at *10; <u>see</u> <u>Lewis v. Humboldt Acquisition Corp.</u>, 681 F.3d 312, 321 (6th Cir. 2012)("The ADEA and the ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for' cause of the employer's adverse decision. The same standard applies to both laws." (citing <u>Gross</u>, 557

24

U.S. at 176, 129 S. Ct. 2343)); Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 962 (7th Cir. 2010)(applying Gross to the ADA by holding that "in the absence of any additional text bringing mixed-motive claims within the reach of the [ADA], the statute's 'because of' language demands proof that a forbidden consideration — here, the employee's perceived disability — was a 'but for' cause of the adverse action"); see also Palmquist v. Shinseki, 689 F.3d 66, 74 (1st Cir. 2012)(applying Gross to the causation analysis resulting from the "because" language of the Rehabilitation Act's retaliation provision).

"Some district courts in this Circuit, reading the writing on the wall, have concluded that Parker cannot endure in light of Gross and that the ADA, like the ADEA, requires a plaintiff to show but-for causation." Lyman, 2014 WL 3417394, at *10 (citing Saviano v. Town of Westport, No. 04 Civ. 522 (RNC), 2011 WL 4561184, at *6 (D. Conn. Sept. 30, 2011)).  "Others have preferred to treat Parker as binding absent a conclusive pronouncement by the Second Circuit or the Supreme Court, and have continued to apply mixed-motives analysis under the ADA. Lyman, 2014 WL 3417394, at *10 (citing Doe v. Deer Mountain Day Camp, Inc., 682 F. Supp. 2d 324, 343 n. 40 (S.D.N.Y. 2010)).  Both Saviano and Deer Mountain Day Camp predate Nassar.

Following Nassar, a number of district courts have avoided the question altogether, finding either that the Plaintiff established or failed to establish a genuine issue of material fact under either standard. Compare Lewis v. Blackman Plumbing Supply L.L.C., No. 11-CV-7046 KMK, 2014 WL 5009487, at *23 n. 7 (S.D.N.Y. Sept. 29, 2014)("the Court need not address this issue because it holds that Plaintiff has satisfied the more-stringent burden ["but-for"] under the McDonnell Douglas[Corp. v.

Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)] framework.") with

Krachenfels, 2014 WL 3867560, at *14 n. 12 (E.D.N.Y. July 29, 2014)("This Court need

not resolve that issue in this case because, as discussed infra, plaintiff has not produced

sufficient evidence from which a rational jury could find that she was constructively

discharged, or that disability discrimination occurred, even under the "motivating factor"

standard."). One case in this district, Bernadotte v. New York Hosp. Med. Ctr. of

Queens, No. 13-CV-965 (MKB), 2014 WL 808013, at *8 (E.D.N.Y. Feb. 28, 2014),

followed Parker and Perry without referencing Gross or Nassar.

Despite the holdings of Parker and Perry, the Second Circuit has essentially

treated whether the "but for" standard applies to ADA claims as an open question in this

circuit. Wesley-Dickson, 2014 WL 4958166, at *6 n. 3 ("[t]h[e] 'but-for' standard might

also apply to her ADA retaliation claim.").

In this case, if the Court's resolution of the proper level of causation required to

prove a discrimination and retaliation claim under the ADA were outcome determinative

of any of the Plaintiff's relevant ADA claims, the Court would decide the issue and

perhaps *sua sponte* certify that part of the order to the Second Circuit pursuant to 28

U.S.C. § 1292(b). That provision permits an interlocutory appeal when a district judge

"shall be of the opinion that such order involves a controlling question of law as to which

there is substantial ground for difference of opinion and that an immediate appeal from

the order may materially advance the ultimate termination of the litigation . . ." Id.

However, the Court finds that the resolution of the proper level of causation

required to prove a discrimination and retaliation claim under the ADA is not outcome

determinative of any of the Plaintiff's relevant ADA claims. This is because the Court

finds that, for purposes of the present motion for summary judgment, the Plaintiff has proffered sufficient evidence to establish a genuine issue of material fact even under the more demanding "but for" standard of causation. In this regard, while the Plaintiff does not point to any direct evidence of discriminatory intent, such as derogatory statements made by the Individual Defendants with respect to the Plaintiff's "disability," the Plaintiff has, in the Court's view, set forth sufficient circumstantial evidence of discriminatory intent on the basis of the Plaintiff's "disability." Indeed, there is evidence in the record that the Plaintiff informed a supervisor that he needed surgery the day of or the day before his termination. Trent v. Town of Brookhaven, 966 F. Supp. 2d 196, 206 (E.D.N.Y. 2013)("Temporal proximity may be sufficient to show a prima facie case"), reconsideration denied, No. 08-CV-3481 (JS)(AKT), 2014 WL 1757512 (E.D.N.Y. Apr. 30, 2014). Further buttressing an inference of discriminatory intent is Sherrill's testimony that to, his knowledge and personal observation, he had never seen the use of "minimal[ly] acceptable" scores on an evaluation used as a basis of termination for an employee. (Sherill Dep., at 78.)

Having found that Plaintiff has established a genuine issue of material fact under either the "motivating factor" or "but for" standard of causation, at this juncture of the litigation, the resolution of the proper level of causation required for an ADA claim is not necessary. It also follows that, for purposes of this summary judgment motion, this issue is not outcome determinative or "controlling" and, therefore, certification of an interlocutory appeal is not appropriate under 28 U.S.C. § 1292(b).

To be sure, if this case proceeds to trial, an answer to the question of the proper level of causation required for an ADA claim will be required in the form of jury

instructions. However, where, at this point, it is unnecessary to decide the question, the Court declines to do so, particularly given the lack of briefing on this issue.

In sum, the Court finds that the Plaintiff has, for purposes of this summary judgment motion, established the causal element of a claim of discrimination under the ADA.

Pursuant to <u>McDonnell Douglas</u>, once the plaintiff has established the *prima facie* case of discrimination or retaliation, the burden then falls upon the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. "The defendant satisfies this burden if the reason given, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" <u>Pabon v. New York City Transit Auth.</u>, 703 F. Supp. 2d 188, 195 (E.D.N.Y. 2010). "Typically, it is not for courts to question the quality or wisdom of the reason, so long as it is not unlawfully discriminatory." <u>Id.</u>

Here, the Defendants do not formally proffer a legitimate non-discriminatory reason for terminating the Plaintiff's employment and the Court could, on this basis, deny that part of their motion for summary judgment dismissing the ADA discrimination claim. However, the Court assumes that the Defendants would rely on the Plaintiff's performance issues, as evidenced by his evaluations. Accordingly, the Court finds that the Defendants have, for purposes of this motion, discharged their burden to come forward with a legitimate non-discrimination reason for terminating the Plaintiff's employment.

In order to survive summary judgment once the defendant has produced a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff

must allege evidence that suggests that it is more likely than not that the reasons offered are mere pretext designed to cover up the employer's actual discriminatory intent. Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)(citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The plaintiff does not have to show that the employer's reasons are false nor that they played no role in the decision; rather, he or she must show merely that the proffered reasons were not the only reasons and that discriminatory animus was at least one of the motivating factors for the adverse employment action. Cronin v. Aetna Life Ins., Co., 46 F.3d 196, 203 (2d Cir. 1995). Thus, the ultimate burden of persuading the finder of fact that the employer intentionally discriminated lies with the plaintiff at all times during this burden-shifting process. Holt v. KMI–Cont'l, Inc., 95 F.3d 123, 129 (2d Cir. 1996).

In this case, the Court finds that the Plaintiff has set forth sufficient evidence that the evaluations were a pretext for unlawful discrimination. Again, the Court takes note of Sherrill's testimony that, in his experience, no Corrections Officer with comparable evaluation scores had been terminated on that basis. Koontz v. Great Neck Union Free Sch. Dist., No. 12-CV-2538 (PKC), 2014 WL 2197084, at *4 (E.D.N.Y. May 27, 2014)(in demonstrating pretext, the plaintiff may rely on "the same evidence as established in plaintiff's *prima facie* case")(italics added).

Accordingly, the Court denies that part of the Defendants' motion for summary judgment dismissing the Plaintiff's ADA discrimination claim against Suffolk County.

E. The Plaintiff's Retaliation Claim Under the ADA

As noted above, the ADA makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of disability. . ." 42 U.S.C. §

12112(a).  The ADA also makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Retaliation claims brought under the ADA are examined under the same McDonnell Douglas burden-shifting framework. See e.g., Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show the following elements: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Id.

"A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable believe that the underlying challenged actions of the employer violated the law." Treglia, 313 F.3d at 719 (internal quotation marks, alteration, and citation omitted); Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 16 (2d Cir. 2013)("'[M]ere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith.'")(alterations and emphasis omitted)(citing Sullivan–Weaver v. New York Power Auth., 114 F.Supp.2d 240, 243 (S.D.N.Y. 2000)).

Relatedly, although the Plaintiff formalized his complaint of discrimination to his superiors, such is not necessary to prevail on a retaliation claim.  Rather, "[t]he complaint

can be informal — an employee does not need to lodge a formal complaint of discrimination." Bowen-Hooks v. City of New York, No. 10-CV-5947 (MKB), 2014 WL 1330941 (E.D.N.Y. Mar. 31, 2014)(analyzing Title VII); Gorbea v. Verizon N.Y., Inc., No. 11–CV–3758 (KAM)(LB), 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014)("Requests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities.").

However, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." Jackson v. Syracuse Newspapers, No. 5:10-CV-01362 (NAM), 2013 WL 5423711, at *20 (N.D.N.Y. Sept. 26, 2013)(citing Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998)), aff'd, 574 F. App'x 36 (2d Cir. 2014).

Applying this requirement, the Court finds that the Plaintiff has produced sufficient evidence from which a rational juror could find that the Plaintiff's complaint "could reasonably have led [the Suffolk County Sheriff's Office] to understand that [animus on the basis of his [disability] was the nature of his objections." Cf. Jackson v. Syracuse Newspapers, No. 5:10-CV-01362 (NAM), 2013 WL 5423711, at *20 (N.D.N.Y. Sept. 26, 2013) aff'd, 574 F. App'x 36 (2d Cir. 2014). In this regard, the Plaintiff's March 22, 2010 letter to Draffin makes explicit reference to alleged discrimination against the Plaintiff on the basis of disability.

The Court pauses to note that, unlike the requirements for a standard disability-based discrimination claim, a plaintiff pursuing a retaliation claim need not prove that he

or she was actually "disabled" within the meaning of the ADA. Stephan v. W. Irondequoit Cent. Sch. Dist., 769 F. Supp. 2d 104, 108 (W.D.N.Y. 2011) aff'd sub nom. Stephan v. W. Irondequoit Cent. Sch. Dist., 450 F. App'x 77 (2d Cir. 2011). In other words, prevailing on the disability discrimination claim under the ADA is not a prerequisite to prevailing on a retaliation claim under the ADA.

In addition, "[u]nlike claims of discrimination, which limit what qualifies as an 'adverse employment action' to changes in the terms and conditions of employment, adverse employment actions in the context of a claim of retaliation are much broader." Jeffries v. Verizon, No. CV 10-2686 (JFB)(AKT), 2012 WL 4344197, at *18 (E.D.N.Y. Aug. 31, 2012) report and recommendation adopted, No. 10-CV-2686 (JFB)(AKT), 2012 WL 4344188 (E.D.N.Y. Sept. 21, 2012); see Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); Solomon v. Southampton Union Free Sch. Dist., No. 08–CV–4822 (SJF)(ARL), 2011 WL 3877078, at *10 (E.D.N.Y. Sept. 1, 2011)(concluding that the Supreme Court in White not only expanded the meaning of an adverse employment action in Title VII retaliation claims, but also in ADA retaliation claims, as the same standard applies in both).

The applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68 (internal quotation marks omitted). However, even under this lenient standard, the Court finds that aside from the

Plaintiff's termination of employment, the Plaintiff did not suffer any "adverse employment action" as is required to prevail on an ADA claim of retaliation, particularly in light of the "paramilitary" employment context presented here.

In opposing the Plaintiff's retaliation claim under the ADA, the Defendants first argue that this claim fails as a matter of law because the Plaintiff, in writing, withdrew his complaint of discriminatory conduct. However, the Court notes that the Plaintiff's withdrawal was qualified or conditional in nature. In any event, while the withdrawal of an internal complaint brought to an end any internal dispute resolution mechanisms, it does not follow, nor do the Defendants cite any authority, that such a withdrawal bars a retaliation claim under the ADA. To hold otherwise would discourage allegedly aggrieved employees from withdrawing internal complaints to employers – even if the situation had thereafter been voluntarily remedied – lest the employee "waive" his or her rights under federal anti-discrimination law. Employers would then be spending more time resolving "moot" internal complaints of discrimination and less time resolving potentially colorable complaints. For these reasons, the Court declines to find that the Plaintiff's withdrawal of his complaint, which a reasonable factfinder could construe as conditional, as a legal bar to the Plaintiff's claim of retaliation under the ADA.

With regard to causation, "[t]he Supreme Court's recent decisions in Gross and Nassar may implicate the causation necessary to prevail on an ADA retaliation claim." Tse v. New York Univ., No. 10 CIV. 7207 DAB, 2013 WL 5288848, at *18 (S.D.N.Y. Sept. 19, 2013). As with traditional ADA discrimination claims, the Second Circuit has not yet articulated what standard now applies for ADA retaliation claims in light of Gross and Nassar.

However, at this time, the Court need not resolve the question whether the Plaintiff must prove that his internal complaint was simply a "motivating factor" in his termination or a "but for" cause of his termination. This is because, in the Court's view, the Plaintiff has, for the same reasons supporting his traditional ADA discrimination claim, set forth sufficient evidence to establish a genuine issue of material fact under either standard.

Having discharged his burden to establish a *prima facie* case for his ADA retaliation claim, the Court finds that, for the same reasons supporting his traditional ADA discrimination claim, the Plaintiff has set forth sufficient evidence to establish that the Defendant's legitimate non-discriminatory reason for terminating the Plaintiff's employment – namely, his evaluations – was a pretext for unlawful retaliation for filing his internal complaint.

Accordingly, the Court denies that part of the Defendants' motion for summary judgment dismissing the Plaintiff's ADA retaliation claim against Suffolk County. In addition, for the reasons stated in connection with the Plaintiff's ADA discrimination claim, the Court is without authority to certify an interlocutory appeal with respect to the proper level of causation required to prevail on such a claim. The Court will resolve this issue, if necessary, through jury instructions.

F.   The ADA Hostile Work Environment Claim.

The Second Circuit has not yet decided whether a hostile work environment claim is actionable under the ADA. Giambattista v. Am. Airlines, Inc., No. 14-1363-CV, 2014 WL 6654162, at *2 n. 1 (2d Cir. Nov. 25, 2014); Adams v. Festival Fun Parks, LLC, 560 F. App'x 47, 51 n. 4 (2d Cir. 2014)(noting "[s]everal of our sister circuits have

recognized a hostile work environment under the ADA" but that "[w]e have not yet had occasion to consider this cause of action"); Farina v. Branford Bd. of Educ., 458 Fed. Appx. 13, 17 (2d Cir. 2011)("Even assuming, arguendo, that the ADA provides a basis for a hostile work environment claim [an issue this Court has not yet decided]. . . ");

Assuming that a hostile work environment claim is cognizable under the ADA, a plaintiff "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)(quoting Gregory v. Daly, 243 F.3d 687, 691–92 (2d Cir. 2001))(internal quotation marks omitted). Whether a workplace is a hostile work environment under the provisions of the ADA requires consideration of the totality of the circumstances. These include "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

Considering these factors, the Court concludes that the Plaintiff fails to establish a genuine issue of material fact as to a hostile work environment claim under the ADA. The summary judgment record indicates that the Plaintiff was berated "at times," but never in front of his peers; that he was required to use the stairs instead of the elevator despite his injury; and that he was instructed to write verbatim from a recruit guidebook.

In the Court's view, these incidents, along other incidents referenced in the record, do not rise to the level of "severe or pervasive" to create an objectively hostile or abusive work environment on the basis of the Plaintiff's disability or perceived disability. Stated otherwise, drawing all inferences in the Plaintiff's favor, no rational juror could find that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [Plaintiff's] employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). This is particularly so given that the Plaintiff acknowledged that training at the Academy was conducted in a "paramilitary" environment.

Accordingly, the Court grants that part of the Defendants' motion for summary judgment dismissing the Plaintiff's hostile work environment claim under the ADA.

G. The Section 1983 Claims

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, unlike with ADA claims, Section 1983 applies by its terms to individual "persons" responsible for violating a plaintiff's rights.

Furthermore, "[i]f a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." Raspardo v. Carlone, 770 F.3d 97, 115 (2d Cir. 2014). The case of Monell v.

Department of Social Services, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) "defines municipalities as 'persons' under § 1983." Raspardo, 770 F.3d at 115.

However, "[a] municipality can be held liable under Section 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights." Marsalis v. Riker's Island Corr. Facility, No. 14-CV-5080 (KAM), 2014 WL 7076058, at *1 (E.D.N.Y. Dec. 15, 2014). In other words, a municipality "may not be held liable for the actions of its employees or agents under a theory of *respondeat superior*." Komondy v. Gioco, No. 3:12-CV-250 (CSH), 2014 WL 6453892, at *9 (D. Conn. Nov. 18, 2014)(italics added). Proof of a single incident of unconstitutional activity in violation of federal law is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).

To be sure, where there is no underlying federal statutory or constitutional violation, there can be no municipal liability under Monell. For this reason, the Court first addresses any potential liability of the Individual Defendants under Section 1983.

The Court pauses to note that "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807127, L. Ed. 2d 114 (1994)(internal citations omitted). Thus, a 1983 action can be based only on a constitutional claim or a claim of a violation of a federal right. Blessing v. Freestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 137 L.Ed.2d 569 (1997)("In order to seek redress through section 1983, . . . a

plaintiff must assert the violation of a federal right, not merely a violation of a federal law.").

In this case, the Plaintiff asserts claims under 42 U.S.C. § 1983 for alleged violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution. However, nowhere in his papers does the Plaintiff articulate a substantive due process claim. To the extent the Plaintiff may have asserted such a claim in his amended complaint, he is deemed to have abandoned it on this motion. O'Brien v. Yugartis, No. 7:12-CV-1600 (NAM)(TWD), 2014 WL 4715825, at *7 n. 2 (N.D.N.Y. Sept. 22, 2014)(deeming substantive due process claim abandoned in opposition to motion for summary judgment).

Further, inasmuch as the Plaintiff asserts an equal protection "class-of-one" claim, that claim fails as a matter of law in light of the Supreme Court's decision in Enquist v. Or. Dep't of Agric., ——U.S. ——, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008). In Enquist, the Supreme Court held that "a 'class-of-one' theory of equal protection has no place in the public employment context." 128 S. Ct. at 2148–49.

To prove a traditional claim under the Equal Protection clause, "a plaintiff must demonstrate that [s]he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct, that is, they were similarly situated in all material respects." Men of Color Helping All Soc., Inc. v. City of Buffalo, 529 F. App'x 20, 26 (2d Cir. 2013)(citations and quotation marks omitted).

"'Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals.'" <u>Firestone v. Berrios</u>, No. 12-CV-0356 (ADS)(ARL), 2013 WL 297780, at *10 (E.D.N.Y. Jan. 22, 2013)(quoting <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 149 (2d Cir.2006).

Here, it is undisputed that the Individual Defendants were at all relevant times acting under color of state law. In addition, the Court finds that the Plaintiff has established a genuine issue of material fact that he was impermissibly treated in a different manner than others because of his disability or perceived disability. Again, Sherill testified that the evaluations of the type the Plaintiff received had never, in his experience, been used to terminate an officer's employment.

However, "it is not enough for the Plaintiff to allege a violation of the Constitution or federal law under Section 1983. The Second Circuit has long recognized that a plaintiff asserting claims under § 1983 must allege the personal involvement of each individual defendant acting under color of state law." <u>545 Halsey Lane Properties, LLC v. Town of Southampton</u>, No. 14–CV–800 (ADS)(GRB), 2014 WL 4100952, at *18 (E.D.N.Y. Aug. 19, 2014); <u>Back v. Hastings On Hudson Union Free School Dist.</u>, 365 F.3d 107, 122 (2d Cir. 2004)("Additionally, '[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'")(quoting <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977)).

Here, the summary judgment record indicates that Tschantre made a comment about the Plaintiff's age; that Tschantre and Hemmendinger required the Plaintiff, and the

other recruits, to engage in the exercise which resulted in the Plaintiff's injury; that, on one occasion, Weick chastised the Plaintiff in private for not completing a document correctly; and that, on one occasion, Korte berated the Plaintiff, and that this encounter was overhead by some of the other recruits.

However, the Plaintiff fails to proffer evidence connecting any of the Individual Defendants to the discriminatory use of the evaluations as a basis for the termination of his employment. Stated otherwise, even after discovery, there is no indication that any of the Individual Defendants possessed firing authority, or that they even recommended or encouraged the termination of the Plaintiff's employment. Notably, the Plaintiff did not include as a defendant either Lombardo or Selg, whose evaluations apparently served as a basis for the termination of his employment.

To be sure, "personal involvement does not hinge on who has the ultimate authority for constitutionally offensive decisions. Rather, the proper focus is the defendant's direct participation in, and connection to, the constitutional deprivation." McClary v. Coughlin, 87 F. Supp. 2d 205, 215 (W.D.N.Y. 2000), aff'd sub nom. McClary v. Kelly, 237 F.3d 185 (2d Cir. 2001). Where a deprivation of rights occurs as the "natural and foreseeable" consequence of a state actor's conduct, he may be liable under section 1983. Morrison v. LeFevre, 592 F. Supp. 1052, 1077 (S.D.N.Y. 1984). "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should have known would cause others to deprive the plaintiff of her constitutional rights." Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir. 1988), cert. denied, 488 U.S. 856, 109 S. Ct. 147, 102 L. Ed. 2d 118 (1988).

In this case, the Court recognizes that Tschantre and Hemmendinger required the Plaintiff, along with other recruits, to perform the exercise which resulted in his injury, which led him to miss certain physical training, which contributed to his "minimally acceptable" evaluation scores and his termination on the basis of those scores. However, the Court concludes that the Plaintiff has failed to establish a genuine issue of material fact that any of the Individual Defendants set in motion the events that led to his ultimate determination. In the Court's view, no rational juror could find that the Plaintiff's termination was a "natural and foreseeable" result of the requirement to perform a certain exercise. Therefore, the Court grants that part of the Defendants' motion for summary judgment dismissing the Plaintiff's Section 1983 claims against the Individual Defendants. The Court need not address any entitlement by the Individual Defendants' to qualified immunity.

Having dismissed the Plaintiff's Section 1983 claims against the Individual Defendants, his derivative claims against Suffolk County must be dismissed as well. Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006)(an "underlying constitutional violation" by a municipal official is required for Monell liability). Accordingly, the Court grants that part of the Defendants' motion for summary judgment dismissing the Plaintiff's Section 1983 claims against Suffolk County.

H. The Plaintiff's State Law Claims

A review of the amended complaint reveals that the Plaintiff's state law claims sound in disability and age discrimination in violation of the NYSHRL. The Defendants argue that, in the event this Court dismisses the Plaintiff's federal causes of action, it should decline to exercise supplemental jurisdiction over these pendent state law claims.

However, as noted above, the Plaintiffs' claim of discrimination and retaliation under the ADA against Suffolk County survive the Defendants' motion for summary judgment.

In their reply papers, the Defendants muster an argument on the merits of the Plaintiff's state law claims. However, "[t]he Second Circuit has clearly stated that arguments raised for the first time in reply papers or thereafter are properly ignored." Colon v. City of N. Y., No. 11–CV–0173, 2014 WL 1338730, at *9 (Apr. 2, 2014)(citing Watson v.. Geithner, 355 F. App'x 482, 483 (2d Cir.2009)); see also Hill v. Donoghue, 518 F. App'x 50, 52 n. 2 (2d Cir. 2013)(declining to address issue raised for first time in the reply brief); ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 97 n .12 (2d Cir. 2007)("We decline to consider an argument raised for the first time in a reply brief."); US Engine Prod., Inc. v. ISO Grp., Inc., No. 12–CV–4471 (JS)(GRB), 2013 WL 4500785, at *8 (E.D.N.Y. Aug. 20, 2013)("[A] party cannot raise arguments for the first time in a reply brief."). For this reason, the Court declines to entertain the Defendants' arguments challenging the merits of the Plaintiff's state law claims.

## III.    CONCLUSIONS

In sum, the Court denies the Defendants' motion for summary judgment as to (1) the Plaintiff's claim of discrimination in violation of the ADA against Suffolk County and (2) the Plaintiff's claim of retaliation in violation of the ADA against Suffolk County, and (3) the Plaintiff's state law claims sounding in in disability and age discrimination in violation of the NYSHRL against all the Defendants, except the Suffolk County Sheriff's Department. The motion is otherwise granted. The Clerk of the Court is respectfully directed to terminate the Suffolk County Sheriff's Department as a party to this action.

**SO ORDERED.**

Dated: Central Islip, New York
December 29, 2014

_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge
